**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CASE NUMBER:**

| | |
|---|---|
| Selective Insurance Company of America,<br><br>Plaintiff,<br>v.<br><br>M-R Electric & Security Alarms, Inc. and Owners Insurance Company,<br><br>Defendants. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Selective Insurance Company of America (hereinafter "Selective"), complaining of Defendants M-R Electric & Security Alarms, Inc. and Owners Insurance Company, states and alleges as follows:

**JURISDICTION & VENUE**

1. Selective is an insurance company organized and existing under the laws of the State of New Jersey with its principal place of business in the State of New Jersey and is authorized to sell insurance and does sell insurance in North Carolina.

2. Upon information and belief, M-R Electric & Security Alarms, Inc. is corporation organized and existing under the law of the State of North Carolina with its principal place of business in the state of North Carolina.

3. Upon information and belief, Defendant Owners Insurance Company is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Michigan and is authorized to sell insurance and does sell insurance in North Carolina.

4. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of

citizenship; therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a)(1).

5. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. The July 21, 2020 Accident

6. On March 24, 2022, Carol Chaney filed suit in the Superior Court of Robeson County, North Carolina against M-R- Electric & Security Alarms, Inc., Benjamin Stout Real Estate Services, Inc., Resolute Building Company, and The City of Fayetteville, North Carolina – Case No. 22 CVS 812 (the "Underlying Action"). A copy of the complaint in the Underlying Action is attached hereto as Exhibit A.

7. The complaint in the Underlying Action alleges that on or about July 21, 2020 Carol Chaney was walking through the Fayetteville Regional Airport next to a construction area with a temporary wall. It alleges that the temporary wall suddenly collapsed and fell onto Ms. Chaney, causing her to be slammed to the ground.

8. The complaint in the Underlying Action alleges that Ms. Chaney suffered injuries as a result of the temporary wall collapsing onto her.

9. The complaint in the Underlying Action alleges that M-R Electric & Security Alarms, Inc. ("M-R Electric") was a contractor working in the airport construction area, near the temporary wall.

10. The complaint in the Underlying Action alleges a negligence claim against M-R Electric and alleges that M-R Electric removed a brace that was securing the temporary wall.

11. Upon information and belief, M-R Electric's workers were working near the temporary wall immediately before its collapse.

12. Upon information and belief, immediately before the fall, M-R Electric's worker(s) unscrewed a brace holding the temporary wall to a permanent wall, in order to access an electrical outlet, and M-R Electric's worker(s) then bumped into the wall or equipment resting against the wall, which caused it to fall over.

13. The complaint in the Underlying Action also alleges a negligence cause of action against Benjamin Stout Real Estate Services, Inc. ("Benjamin Stout").

14. In 2020, the Fayetteville Regional Airport was in the midst of a large renovation project. Resolute Building Company was the general contractor for the project. Part of the renovation project included a kitchen upfit for the Tailwind restaurant in the airport.

15. The City of Fayetteville put out a separate bid for this kitchen upfit. In 2020, Benjamin Stout won the bid and became the general contractor for this part of the project.

16. Upon information and belief, Benjamin Stout started construction work on the kitchen upfit in July 2020.

17. In a prior deposition, the 30(b)(6) deponent for M-R Electric stated that his employees told him after the accident that they removed the temporary wall bracing immediately before the wall fell.

18. At the time of the July 21, 2020 accident, M-R Electric was working as a subcontractor for Benjamin Stout on the kitchen upfit.

**B. <u>The Subcontract</u>**

19. On April 1, 2020, M-R Electric entered into a subcontract agreement with Benjamin Stout for electrical work at the Fayetteville Regional Airport (the "Subcontract"). A copy of the Subcontract is attached hereto as Exhibit B.

20. The Subcontract required M-R Electric to obtain and maintain commercial general liability insurance with liability limits of not less than $1,000,000.

21. The Subcontract required M-R Electric to have Benjamin Stout and its directors, officers, and employees added as additional insureds on such commercial general liability insurance policy.

22. The Subcontract required M-R Electric to obtain and maintain umbrella liability insurance with liability limits of not less than $1,000,000.

23. The Subcontract required M-R Electric to have Benjamin Stout added as additional insureds on such umbrella liability insurance policy.

24. The Subcontract required such commercial general liability insurance policy and umbrella liability insurance policy to provide primary insurance coverage for Benjamin Stout.

25. The Subcontract includes an indemnity provision, which provides in pertinent part:

> **ARTICLE 9. Indemnity**
>
> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Contractor, Contractor's representatives, agents and employees from all claims, losses, damages and expenses, including attorney's fees arising out of or resulting from the performance of the work, … caused in whole or in part by any negligent act or omission of the Subcontractor, anyone directly employed by them or anyone whose acts they are liable for, and attributes to bodily injury…

26. On April 29, 2021, Benjamin Stout's insurer sent a tender letter to M-R Electric, advising M-R Electric of Ms. Chaney's claim, stating that Benjamin Stout should be an additional insured on M-R Electric's general liability policy, and tendering the claim to M-R Electric. It requested that M-R Electric confirm whether it would be accepting tender of the claim.

27. On June 24, 2021, Benjamin Stout's insurer sent another tender letter to M-R Electric.

## C. The Owners Insurance Company Policy and Response

28. Defendant Owners Insurance Company issued a commercial policy, Policy No. 204615-35665959-20, to M-R Electric and Security Alarms Inc. with effective dates of January 15, 2020 to January 15, 2021 (hereinafter the "Owners Policy"). The Owners Policy provides a $1,000,000 each occurrence commercial general liability coverage limit. A copy of the Owners Policy is attached hereto as Exhibit C.

29. On August 20, 2021, Benjamin Stout's insurer emailed the June 24, 2021 tender letter to the Owners Insurance Company adjuster for M-R Electric.

30. On November 11, 2021, counsel for Ms. Chaney made a settlement demand.

31. On December 8, 2021, Benjamin Stout's insurer sent another letter to Owners Insurance Company requesting defense, indemnification, and additional insured status on a primary basis for Benjamin Stout pursuant to the terms of the Subcontract.

32. On March 29, 2022, Benjamin Stout was served with the summons and complaint in the Underlying Action.

33. On April 19, 2022, counsel retained by Owners Insurance Company sent Benjamin Stout a letter stating that he had been retained by the insurer to represent Benjamin Stout in the Underlying Action.

34. On May 2, 2022, Owners Insurance Company sent Benjamin Stout a reservation of rights letter. The letter provides in part:

> We have been presented with a tender from Benjamin Stout Real Estate Services, Inc. (Benjamin Stout) on the assertion that you qualify as an additional insured under the M-R Electric policy. We have reviewed the contract with insurance and indemnification language for substantiation. Benjamin Stout will be afforded additional insured status, but only with respect to liability for bodily injury caused in whole or in part, by M-R Electric's work…. [W]e are agreeing to provide both M-R Electric and Benjamin Stout with defense in this lawsuit, under reservation of rights.

35. In April 2024, Owners Insurance Company negotiated a settlement agreement with the underlying plaintiff that did not include Benjamin Stout. Owners paid $225,000 for a settlement in favor of M-R Electric, but the settlement did not protect Benjamin Stout.

36. After this settlement, there remained $775,000 of the Owners Policy liability limit.

37. In April 2024, the underlying plaintiff was willing to settle her claims against Benjamin Stout for $750,000.

38. In an April 17, 2024 email, counsel for the underlying plaintiff stated: “As we discussed yesterday as well, we believe the facts are clear that Ben Stout is vicariously liable for anything done by MR employees which contributed to the wall collapse and the release we are entering into w/ MR is intended to preserve that claim.” This email is attached hereto as Exhibit D.

39. By letter dated April 19, 2024, Benjamin Stout asked Owners Insurance Company to participate in settlement negotiations to resolve the claims against it.

40. Despite being provided with the contents of the April 17, 2024 email, Owners Insurance Company refused to contribute any of its remaining liability limit to a settlement for Benjamin Stout.

41. Three weeks before trial, Owners Insurance Company discontinued its defense of Benjamin Stout.

**D. The Selective Policy and Response**

42. Selective issued a commercial general liability policy, Policy No. S2372347, to Benjamin Stout with effective dates of January 1, 2020 to January 1, 2021 (hereinafter the “Selective Policy”). A copy of the Selective Policy is attached hereto as Exhibit E.

43. Selective provided a defense to Benjamin Stout in the Underlying Action.

44. On May 6, 2024, in exchange for Selective's $900,000 payment, Ms. Chaney signed a settlement agreement and release in favor of Bejamin Stout.

45. On June 25, 2024, the underlying plaintiff voluntarily dismissed with prejudice Benjamin Stout from the Underlying Action.

46. Consequently, Selective is subrogated to Benjamin Stout's rights against M-R Electric and Owners Insurance Company for the amounts Selective paid in defense and indemnification of Benjamin Stout in the Underlying Action.

**FIRST CAUSE OF ACTION**
**(Contractual Indemnity as to M-R Electric)**

47. Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

48. On April 1, 2020, M-R Electric entered into the Subcontract with Benjamin Stout.

49. On July 21, 2020, Carol Chaney was walking through the Fayetteville Regional Airport next to a construction area with a temporary wall when the temporary wall fell onto her, causing her bodily injury.

50. Upon information and belief, M-R Electric's workers were working near the temporary wall immediately before its collapse.

51. Upon information and belief, immediately before the fall, M-R Electric's worker(s) unscrewed a brace holding the temporary wall to a permanent wall to access an electrical outlet and then bumped into the wall or equipment resting against the wall, which caused it to fall over.

52. In a prior deposition, the 30(b)(6) deponent for M-R Electric stated that his employees told him after the accident that they removed the temporary wall bracing immediately before the wall fell.

53. The Subcontract includes an indemnity provision, which provides in pertinent part:

**ARTICLE 9. Indemnity**

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Contractor, Contractor's representatives, agents and employees from all claims, losses, damages and expenses, including attorney's fees arising out of or resulting from the performance of the work, … caused in whole or in part by any negligent act or omission of the Subcontractor, anyone directly employed by them or anyone whose acts they are liable for, and attributes to bodily injury…

54. This provision requires M-R Electric to indemnify and hold harmless Benjamin Stout for all claims, losses, damages and expenses, including attorney's fees resulting from the July 21, 2020 accident.

55. Benjamin Stout and Selective repeatedly tendered Benjamin Stout's defense and indemnification for the July 21, 2020 accident to M-R Electric and its insurer.

56. Neither M-R Electric nor its insurer, Owners Insurance Company, paid to settle the underlying plaintiff's claims against Benjamin Stout.

57. M-R Electric's insurer ceased providing a defense to Benjamin Stout without resolving the claims against Benjamin Stout.

58. Selective provided a defense for Benjamin Stout in the Underlying Action and paid $900,000 to settle the claims against Benjamin Stout.

59. As a result, Selective respectfully requests contractual indemnification damages, including, but not limited to, its $900,000 settlement payment, defense expenses, and attorney's fees.

## SECOND CAUSE OF ACTION
## (Equitable Indemnity as to Owners Insurance Company)

60. Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

61. Benjamin Stout repeatedly tendered its defense and indemnification to Owners Insurance Company.

62. The Owners Policy provides a $1,000,000 each occurrence commercial general liability coverage limit.

63. On May 2, 2022, Owners Insurance Company sent Benjamin Stout a reservation of rights letter. The letter provides in part:

> We have been presented with a tender from Benjamin Stout Real Estate Services, Inc. (Benjamin Stout) on the assertion that you qualify as an additional insured under the M-R Electric policy. We have reviewed the contract with insurance and indemnification language for substantiation. **Benjamin Stout will be afforded additional insured status, but only with respect to liability for bodily injury caused in whole or in part, by M-R Electric's work**…. [W]e are agreeing to provide both M-R Electric and Benjamin Stout with defense in this lawsuit, under reservation of rights. [Emphasis added].

64. The complaint in the Underlying Action alleges that on or about July 21, 2020 Carol Chaney was walking through the Fayetteville Regional Airport next to a construction area with a temporary wall. It alleges that the temporary wall suddenly collapsed and fell onto Ms. Chaney, causing her to be slammed to the ground.

65. The complaint in the Underlying Action alleges that M-R Electric was a contractor working in the airport construction area, near the temporary wall.

66. The complaint in the Underlying Action alleges that M-R Electric removed a brace that was securing the temporary wall and caused it to collapse.

67. The complaint in the Underlying Action alleges that the negligence of M-R Electric is imputed to the defendant that employed M-R Electric via the doctrine of *respondeat superior*, making the employer defendant vicariously liable for M-R Electric's negligence.

68. At the time of the July 21, 2020 wall collapse, M-R Electric was working as Benjamin Stout's subcontractor on the kitchen upfit for the Tailwind restaurant in the airport.

69. In a prior deposition, the 30(b)(6) deponent for M-R Electric stated that his employees told him after the accident that they removed the temporary wall bracing immediately before the wall fell.

70. In April 2024, Owners Insurance Company negotiated a settlement agreement with the underlying plaintiff that did not include Benjamin Stout. Owners Insurance Company paid $225,000 for a settlement in favor of M-R Electric.

71. After this settlement, there remained $775,000 of the Owners Policy liability limit.

72. In April 2024, the underlying plaintiff was willing to settle her claims against Benjamin Stout for $750,000 – within the remaining limits of the Owners Policy liability coverage.

73. In an April 17, 2024 email, counsel for the underlying plaintiff stated: "As we discussed yesterday as well, we believe the facts are clear that Ben Stout is vicariously liable for anything done by MR employees which contributed to the wall collapse and the release we are entering into w/ MR is intended to preserve that claim."

74. By letter dated April 19, 2024, Benjamin Stout asked Owners Insurance Company to participate in settlement negotiations to resolve the claims against it.

75. Despite being provided with the contents of the April 17, 2024 email, Owners Insurance Company refused to contribute any of its remaining liability limit to a settlement for Benjamin Stout.

76. Three weeks before trial, Owners Insurance Company discontinued its defense of Benjamin Stout.

77. Thereafter, Selective paid $900,000 to settle the underlying plaintiff's claims against Benjamin Stout.

78. As a result, Selective respectfully requests equitable indemnification damages, including, but not limited to, its $900,000 settlement payment, defense expenses, and attorney's fees.

**WHEREFORE**, Plaintiff Selective prays the Court:

1. For judgment against the Defendants for damages in an amount in excess of $75,000, plus interest at the legal rate;

2. That the cost of this action to include reasonable attorney's fees and witness fees be taxed against the Defendants;

3. For trial by jury; and

4. For such other and further relief as the Court may find just and proper.

MURPHY & GRANTLAND, P.A.

*s/Wesley B. Sawyer*
Wesley B. Sawyer, Esquire (Fed. I.D. No.: 11244)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
Wsawyer@murphygrantland.com
Attorneys for Plaintiff Selective Insurance Company of America

March 28, 2025